IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| In re: | ) |
| | ) No. 12-11714 |
| JEROME ARNOLD SHERARD | ) |
| | ) Chapter 11 |
| Debtor. | ) |

**TRUSTEE'S MOTION TO SELL DEBTOR'S MEMBERSHIP INTEREST IN SKYVIEW MEDICAL GROUP, LLC**

> A hearing will be held on May 22, 2014 at 10:00 a.m. in Bankruptcy Courtroom A, Third Floor, Historic United States Courthouse, 31 E. 11th Street, Chattanooga, TN 37402, on this Motion. **If you do not want the court to grant the relief requested, you or your attorney must attend this hearing. If you do not attend the hearing, the court may decide that you do not oppose the relief sought in the above matter and may enter an order granting that relief.**

Comes now the Trustee, W. Grey Steed, by and through counsel, pursuant to 11 U.S.C. §363, and moves for authority to sell the Debtor's membership interest in Skyview Medical Group, LLC. Debtor owns 100% of the membership interest of Skyview Medical Group, LLC, a Tennessee limited liability company. Skyview Medical Group, LLC operates a medical pain management practice located at 11653 Chapman Highway, Seymour, Tennessee ("Skyview Medical Center"). Debtor purchased Skyview Medical Center from Darrell Reed on or about December 31, 2011 for $4,000,000.00 evidenced by a promissory note in the original principal amount of $4,000,000.00 executed by Debtor and Skyview Medical Group, LLC. Debtor is currently under indictment by the United States of America in Case 1:12-cr-104 pending before the United States District Court for the Eastern District of Tennessee at Chattanooga, on various counts of violations of federal law involving distribution of controlled substances in connection with the operation of pain management clinics other than Skyview Medical

1

Center. Debtor is scheduled for trial May 5, 2014. Based upon Debtor's indictment and subsequent conditions of release from custody which prohibited Debtor from practicing medicine and barred him from prescribing controlled substances, the Tennessee Department of Health, which regulates and supervises pain management clinics under T.C.A. §63-1-301, et seq. (the "Pain Management Clinic Act"), determined that Skyview Medical Center was in violation of T.C.A. §13-1-301, et seq., and has threatened to revoke Skyview Medical Center's pain management clinic certificate. Debtor's sole source of income is payment from Skyview Medical Center of approximately $10,000 per month from its operations, which income is paid to the Trustee for distribution to creditors. If the pain management clinic certificate is revoked by the State, Debtor's income, and thus payments to the Trustee for creditors, will cease.

In order for Skyview Medical Center to maintain its pain management clinic certificate, Dr. Sherard cannot be involved in the ownership of it. Therefore, payments to Dr. Sherard will cease regardless. However, in an effort to generate income for the estate of Debtor, the Trustee desires to sell Debtor's membership interest in Skyview Medical Group, LLC under the following terms and conditions:

1. <u>Property to be Sold</u>: All of Debtor's membership interests of Skyview Medical Group, LLC (the "Property").

THE TRUSTEE MAKES NO WARRANTIES IN THE SALE OF THE PROPERTY. TRUSTEE WILL CONVEY BY APPROPRIATE INSTRUMENT, RIGHT, TITLE AND INTEREST THAT THE TRUSTEE HAS THE RIGHT TO CONVEY.

Case 1:12-bk-11714   Doc 247   Filed 04/25/14   Entered 04/25/14 11:41:23   Desc Main
Document      Page 3 of 8

2. <u>Terms and Conditions of Sale</u>: $100,000.00 to be paid in accordance with the terms of the Membership Interest Purchase Agreement attached hereto as Exhibit A, plus the assumption of the indebtedness owed by Debtor and Skyview Medical Group, LLC to Darrell G. Reed in the original principal amount of $4,000,000.00.

3. <u>Name of Purchaser</u>: Jeffery B. Brown, M.D., 800 Ivypoint Lane, Knoxville, Tennessee 37922.

4. <u>Date of Sale</u>: Ten (10) days on or after the entry of an Order approving the sale as set forth herein.

5. The Trustee believes the sale of the membership interest is in the best interest of the creditors and the estate.

WHEREFORE, the Trustee prays for the entry of the attached order authorizing the Trustee to sell the Property to Jeffery B. Brown, M.D. for $100,000.00 and the assumption of debt, and for such other further general relief as is just.

Dated: April 25, 2014.

                                        Respectfully submitted,
                                        **PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

                                        By: <u>/s/ Cara J. Alday</u>
                                              Cara J. Alday    BPR# 13140
                                              Attorneys for Trustee
                                              537 Market Street
                                              Suite 202, Market Court
                                              Chattanooga, TN 37402

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2014 a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All parties on the attached matrix were served via US mail.

                                                                           **PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**

                                                                           By: /s/ Cara J. Alday

F:\WpDocs\CLIENT\S\Steed - Sherard\Pleadings\Motion Sell 4.21.14.doc

## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This MEMBERSHIP INTEREST PURCHASE AGREEMENT (the "Agreement") is made and entered into effective as of the ___ day of _____, 2014, by and between **Jeffrey B. Brown, M.D.**, a resident of Knox County Tennessee ("Purchaser") and **W. Grey Steed, Trustee of the Bankruptcy Estate of Jerome Arnold Sherard, M.D.**, Case No. 12-11714, currently pending in the United States Bankruptcy Court, Eastern District of Tennessee, Southern Division ("Seller").

### WITNESSETH:

**WHEREAS**, the Bankruptcy Estate of Jerome Arnold Sherard, M.D. (the "Estate") owns 100% of the membership interests of **Skyview Medical Group LLC**, a Tennessee limited liability company ("Company"); and

**WHEREAS**, Seller desires to sell, assign and transfer all of his right, title and interest in and to 100% of the membership interests of Company ("Transferred Interest") to Purchaser; and

**WHEREAS**, Purchaser desires to accept such transfer and assignment and to purchase the Transferred Interest from Seller upon the terms and conditions set forth herein.

**NOW, THEREFORE**, for and in consideration of the foregoing premises, and the mutual covenants, terms, conditions and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Transfer of Membership Interest.** Subject to the terms and conditions contained herein, Seller agrees to sell, assign and transfer to Purchaser at the Closing the Transferred Interest, and Purchaser agrees to accept such transfer and assignment and to purchase all of the Transferred Interest.

2. **Purchase Price.** The parties agree that the purchase price for the Transferred Interest to be acquired by Purchaser hereunder is One Hundred Thousand Dollars ($100,000.00) (the "Purchase Price") plus the assumption of the indebtedness owed to Darrell G. Reed ("Reed") in the original principal amount of $4,000,000.00. The Purchase Price shall be paid by Purchaser by delivering, at Closing, to Seller, $10,000.00 in cash or certified funds and a Promissory Note (the "Note") for the balance of the Purchase Price in substantially the form attached hereto as Exhibit A.

3. **Closing.** The closing of the sale shall take place ten (10) days after the approval of the sale by the Bankruptcy Court ("Closing").

4. **Closing Deliverables.** At the Closing, Seller shall deliver to Purchaser a validly executed Bill of Sale and Assignment in substantially the form attached hereto as Exhibit B evidencing the transfer of the Transferred Interest to Purchaser. At the Closing, Purchaser shall deliver to Seller (i) the Note and (ii) an Assignment, Assumption and Amendment of Promissory Note in substantially the form attached hereto as Exhibit C.

5. **Representations and Warranties of Purchaser.** Purchaser hereby represents and warrants that this Agreement has been duly executed and delivered by Purchaser and is the legal, valid, and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject to applicable laws and judicial limitations on the availability of equitable remedies. Purchaser further represents and warrants that Purchaser has full power, authority and legal right to enter into this

630834v2

1

EXHIBIT A

Agreement and to consummate the transactions provided for herein. Purchaser further represents and warrants that Purchaser has thoroughly investigated Company's condition and records and has full knowledge of Company's assets, liabilities, and operations.

6. **Waiver of Notice.** Purchaser and Seller waive any notice requirements or transfer restrictions contained in the operating agreement of Company or Tennessee law regarding the transfer of the Transferred Interest in Company contemplated in this Agreement.

7. **Subject to Bankruptcy Court Approval.** This Agreement is subject to Bankruptcy Court approval, and shall be valid and enforceable upon the entry by the Bankruptcy Court of an Approval Order and such Approval Order becoming a Final Order. The "Approval Order" shall be an order or orders of the Bankruptcy Court in form and substance reasonably acceptable to Purchaser approving this Agreement and all of the terms and conditions hereof, and approving and authorizing Seller to consummate the transactions contemplated hereby. Without limiting the generality of the foregoing, such order shall find and provide, among other things, that (i) Seller gave adequate notice as required by the United States Bankruptcy Code, as amended (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure and all applicable orders of the Bankruptcy Court; (ii) the Property sold to Purchaser pursuant to this Agreement shall be transferred to Purchaser free and clear of all liens, claims, encumbrances and liabilities of any person, such liens, claims, encumbrances and liabilities to attach to the cash portion of the Purchase price; (iii) Purchaser has acted in good faith within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby; (iv) this Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith and from arm's length bargaining positions; (v) the Bankruptcy Court issuing the Approval Order shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, or the breach hereof; (vi) this Agreement and the transactions and instruments contemplated hereby shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, Seller or any Chapter 7 or Chapter 11 trustee of the Seller and its estate; (vii) the Purchaser is not a successor corporation to the Seller and is not liable for any obligations or liabilities of the Seller (including any administration expenses) except for those expressly assumed by Purchaser herein, and (viii) the transactions contemplated hereby are exempt from transfer taxes pursuant to Section 1146(c) of the Bankruptcy Code. "Final Order" shall mean an order of a bankruptcy court, that (i) has not been reversed or stayed and as to which the time to appeal has expired and deadlines for filing any motion, petition, application for review, rehearing or certiorari have expired and as to which no appeal, motion or petition for review, rehearing or certiorari is pending or (ii) with respect to which any appeal has been finally decided and no further appeal or petition for certiorari can be taken or granted.

8. **General Provisions**

    8.1. **Entire Agreement.** This Agreement represents the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all other prior proposals, agreements, understandings and communications, whether oral or written. Each party hereby acknowledges that they have read this Agreement, understand it, and agree to be bound by its terms and conditions, and that they have executed the same of their own free will.

    8.2. **Amendments.** No provision of this Agreement may be amended, modified, revoked or waived except by a writing signed by a duly-authorized representative of each of the parties hereto.

    8.3. **Assignment.** This Agreement is personal to the parties hereto, and therefore, none of the rights, obligations or responsibilities of any party hereunder may be delegated, transferred or

otherwise assigned by any party hereto without the prior written consent of each party to this Agreement, which consent shall not be unreasonably withheld.

**8.4. Severability.** The invalidity or unenforceability of any part of this Agreement, for any reason, shall not prejudice or affect the validity or enforceability of the remainder, and in such event the parties hereto shall use their best efforts to agree upon a replacement for such invalid or unenforceable provision in terms which correspond as closely as possible to the original provision.

**8.5. Parties Bound.** This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and permitted assigns.

**8.6. Further Assurances.** From and after the execution of this Agreement and before or following the Closing of the transactions contemplated in this Agreement, the parties agree to execute and deliver such additional documents, agreements, notices, acknowledgments or other instruments as may be reasonably necessary or required to effectuate the intent and purposes of this Agreement.

**8.7. Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed to be an original, but together shall constitute one and the same instrument. Furthermore, following execution, the executed Agreement may be delivered by facsimile and/or electronic mail, and the successful delivery by a party by any such means shall constitute valid delivery for all purposes and the signatures delivered and received in that manner shall be deemed to be the genuine and original signatures of the party delivering them; provided, however, that any party transmitting its signature via facsimile or electronic mail shall also promptly deliver an executed original of this Agreement to the other party (but the failure to do so shall not affect the validity of this instrument).

**8.8. Headings.** The headings of the sections of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

**8.9. No Broker.** Each party hereto represents and warrants to the other that it has not engaged any broker or other person who would be entitled to any type of commission or finder's fee in connection with this transaction.

**8.10. Construction.** The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. The word "including" shall mean including without limitation. Any reference to the singular in this Agreement shall also include the plural and vice versa.

**8.11. Notices.** Except as specifically provided in this Agreement, all notices required hereunder shall be in writing and shall be given by personal delivery, overnight courier service, first class mail postage prepaid, at the parties' respective addresses set forth herein, or at such other address(es) as shall be specified in writing by such party to the other party in accordance with the terms and conditions of this Section. All notices shall be deemed effective upon personal delivery, or one business day following deposit with any overnight courier service, or three business days following deposit with the U.S. Postal System, first class postage attached, in accordance with this Section. Notices for Purchaser and Seller shall be sent to the address set forth in the Preamble or to the last known address.

8.12.  **Governing Law and Forum.** This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of Tennessee.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

PURCHASER:

_____
Jeffrey B. Brown, M.D.

SELLER:

_____
W. Grey Steed, Trustee of the Bankruptcy Estate of Jerome Arnold Sherard, M.D.

630834v2

4